Next, we have in Ray Lasher, Pamela Lasher, appellant appearing pro se, and Suzanne Grant appearing for Appley. Okay, Ms. Lasher, would you like to reserve some time for rebuttal? Three to five minutes, depending on how it goes. Is that okay?  All right. Sure. Go ahead. And I wanted to adopt some of what the prior attorney started with, that I wear many hats in this proceeding. I'm a debtor, I'm a lawyer, and I'm pro se. And I think that's important because I think the fact that I'm a debtor got lost in all of this. And the reason I say that, I had actually written out what I was going to say, but I think it's more poignant to talk about it. And I think it's important to note that the State Bar seeks to litigate or seemingly litigate what didn't yet come to fruition in the State Bar court proceedings, because they're still pending in the California Supreme Court. And a good portion of their argument, or most of the argument, focuses on and relies upon a regulatory motive, which, as the court knows, and I know your honors have actually engaged with counsel for the State Bar in this year case, and I didn't check the other one, so I know you're all familiar with the law. But given the State Bar court proceedings, so far, where we are and what we have is, we have a recommendation based on an opinion by the State Bar and the State Bar court that is yet to be adopted by the Supreme Court. And based on that opinion, I find myself involuntarily inactive, and I am in a position where the recommendation doesn't even consider, without any way, to get the recommendation to consider the debt, which is at the core of all of this, which seems to get lost. And it gets lost because it acts like, the State Bar is acting like I have a disregard for all the court orders that were made in debt collection proceedings that arose from two judgments that were, as the court knows, as your honors now know, is still in dispute because the Supreme Court has yet to rule as to whether or not the satisfaction made the court order is invalid, or whether I had legal arguments to challenge in those, and whether I had a right to do so. Those are not properly subject here. What's properly subject here is whether or not the bankruptcy code protects somebody in my position. And a lot of what I think the record reflects is my lack of knowledge of the bankruptcy and the bankruptcy code at the very beginning. But I think by the time I got here, I'm now way more versed and understand it all. And what I understand it to be is that up to this point, what the law has considered or been confronted with are attorneys who have engaged in conduct that was under the California's rules of professional conduct, dishonest or misconduct based on the rules, not on a debt. And this misconduct and dishonesty of those attorneys wound up resulting in debt that caused those attorneys to go to the bankruptcy court to seek refuge from having to pay that maybe even argue that they can get around that debt. However, in this case, what happened here, and I understand you disagree with what the state courts have done, but because you didn't pay this debt, there were enforcement proceedings and the Superior Court, I think it was, cited you for contempt and also imposed other sanctions and so on. And as I understand it, you're saying that none of that should count because it's all based on nonpayment of a debt. My question for you is, don't you think this case would be very different if you just simply not paid the debt and done nothing else? Can you repeat that? And I apologize. Wouldn't this case be very different if all you did was just not pay the ECI debt? So if I hadn't paid it and there were no proceedings that took place after that, and that was the only thing that happened, would the case be different? Is that the question? Right. Okay. No, I don't think it would be different because I think that the government unit engaged in conduct that assisted the collection of the debt. And I'm simply saying, maybe the question is misplaced, but I'm saying that if the judgment had been taken against you and all you did was say, I can't pay it, I can't afford it. Oh, I think I understand. Wouldn't that be a very different situation than we're in now? No, because that's actually what I did. The record, it doesn't seem to work. No, it's not. You sued them. You sued the creditor. You got sanctioned for contempt and for attorney's fees in the course of the collection action. Okay. So you're talking, if I understand about the original debt in the small claims court, and then you take that original debt to the next one. No, I don't think it would be different because that debt was actually paid, which is, I think it was the copies of those records were attached to the request for judicial notice. And I mean, copies- You're not asking us to decide the validity of that judgment though, right?  You're asking us to decide the effect of the discharge. So I would suggest you move on to the discharge question. Even if you were to prevail on the debt issue, there was some litigation that was going on. And the record says, courts concluded that you abused the judicial process. Even if you were right that you don't owe the money, that's different from how you behave in the tribunal. Well, I guess the query would be, it depends on what you think about how I behave. Because under 525 and under the discharge, the only way you get to where my argument is, is if one, the debt is dischargeable and two, you were insolvent. Well, but we have a record where courts have said, and I'm looking at one of the quotations here, is that you engaged in unprofessional conduct and there was abuse of the judicial process. Well, I don't think that 525 discusses the issue about abuse of process, regulatory motives, assuming I would agree with the court that that's the record. Because the record down below, which we're not allowed to consider, talks about fee waivers all along. And what's missing in this record, because we're talking about abuse of process, is that the court is litigating, while we start out the idea that we're not litigating those issues, we're seemingly back to litigating those issues before this panel. Because for you to consider that I allegedly abused the process, you would be usurping the California Supreme Court's authority to make that decision, number one. And number two, not only would you be usurping that authority, but FCC versus NextWave and WICCI say, I don't know how you pronounce that, but WICCI say that you can't consider regulatory motives. So assuming I did all that and I abused all the process, you can't escape that this case is exactly like FCC and Perez. Because in Perez, the debtor got into some auto accident, he didn't pay the debt, and there was some law, some licensing law that says, you didn't pay that debt, you can't have a license. And then he said, he goes back- That's different. That was, you didn't pay the debt, you can't have a license. Here it is, it's not about the debt, but it was you didn't behave well in court proceedings up to the standards that are required of lawyers. And that's why you're in trouble, not because of the debt. So what your honors are saying then is that we're in the middle of debt collection proceedings, and I don't behave properly because you, and this assumes that I violated court orders because I didn't produce a document relating to my own personal finances, and therefore I misbehaved. And even though I was allegedly not insolvent because I abused the process, or I used the process, I filed an appeal. No court found that I abused the process by filing an appeal. You have a right to file an appeal. My underlying superior court judgment was a slap judgment, and we didn't really get into that. But it was a slap judgment, which I lost, not on the merits, but because I didn't have an opposition. And then that judgment was paid by the underlying deposit of the money with the court. But irrespective of all that, that's not what 525A says. And yes, I disagree with the interpretation that my case is different than the Perez situation, because if I had paid this debt 20 years ago, or not paid the debt 20 years ago, and they didn't debt collect, we wouldn't be here. But if I have a discharge, and that discharge voids the underlying judgment, and it voids every order that arises from, is based on, and is related to my personal liability to that discharge debt, every, you want me to stop? No, I was going to say personal liability is the key part of that section. I want to take you back to 525, because 525A protects your right to get a license, well, it says they can't deny you a license solely because you didn't pay a dischargeable debt. But here, the State Bar is telling us it's not because of the nonpayment, it's because of the misconduct you engaged in the subsequent litigation. How can you say that that license denial is solely due to your nonpayment of a debt? That's because 525A and 524 can't be in a vacuum without each other. Under 525, you get a discharge, and all these debt collection orders, because they're a personal liability, they presume to be a person, to impact my personal liability to this now discharged debt, which means that all those debt collection orders are void. If all those debt collection orders are void, then how would you enforce the debt collection, or how would you enforce the charges? It begs the question. Well, you don't know that the debt collection orders are void yet, because you don't know what's non-dischargeable. Let's just stop for a second, okay? You don't know what's non-dischargeable, because the State Bar doesn't care anymore. They don't care whether you pay this or not, they're just borrowing you, okay? So how does 525A fit under that scenario? It does, for lots of reasons, because under Perez and under FCC, the regulatory motive doesn't matter. You can't take away the requirement to pay and get around 525. 525 in the House report say lots of different things about how discrimination can take place. You can take place, not because you don't pay, and not because you get a discharge, because it doesn't matter if you get a discharge, it's based on dischargeable debt, which you don't know yet, okay? Sorry? You don't know whether it's dischargeable or not. Yes, I do, because- No, I guarantee you, you don't, and I would move on if I were you. I don't know if it's dischargeable. Yes, 525A7 is a complicated statute. I guarantee you, there's no answer to that yet. You're talking about the contempt judgment then? You're not talking about the East County debt because- Exactly, exactly. Okay, understood. I didn't know that's where the analysis is going.  However- I'm sorry, I jumped in for Judge Corr, but I apologize. Okay, well, I apologize too, but there's a debt component here, and you have a right to defend yourself. Even if you won and you concluded that there was no debt, in that process, in defending yourself as a lawyer, you had a set of rules dealing with the decorum and what you could do. Even if you were successful and could prove that there was no debt, you were in a courtroom and you took action that the California Bar Association is saying is so egregious that you shouldn't be allowed to practice law. Okay. Even if there was no debt. If there was no debt, I wouldn't be here because there's no debt- No, the debt was, no one has said that they didn't have a right to pursue it. You had a right to defend yourself, and even if you prevailed, you still had to appear and act in accordance with a set of rules that apply to lawyers, and that's what was- I guess I'm misunderstanding what the court's getting at because if the debt had been paid or they had not collected, these orders would not exist. They're all debt collection orders from the gate. From 2014, every single one of these are debt collection orders, and they're all dischargeable under Inmate Albert Sheridan because they're discovery orders. And in answer to the previous question about dischargeability, even though there's a presumptive discharge, the debt is dischargeable. It's the kind of class under 523-8246 that is either dischargeable-  But the conduct, the conduct was the basis. The conduct, we're going to hear from the Bar Association in a second here, but it's the conduct that they're saying is the reason why- Well, but the conduct is the violation of court orders that are now discharged by the debt. And 525 doesn't require a discharge. It only requires the debt to be dischargeable. I just want to point out that you're inside your three minutes now. If you want to reserve, you could certainly reserve whatever time you have left. I'll reserve whatever time I have left. Thank you. Okay. Ms. Grant, please go ahead. Good afternoon. May it please the court. My name is Suzanne Grant. I'm an attorney for Apollita State Bar of California. This appeal arises from the bankruptcy court's orders, correctly concluding that Ms. Latcher's bankruptcy and discharge do not impact her discipline. The proceedings at issue were not debt collection mechanisms. The State Bar is not a debt collector. The State Bar exercises a critical component of public protection and the integrity of the legal profession. Ms. Latcher, as the court recognized in some of the questioning, has engaged in an 18-year pattern of ethical improprieties. While her conduct tangentially related to an initial judgment debt, her recommended discipline was based on violations of her professional duties. The violations are the only basis for discipline, regardless of whether she pays this debt or not, regardless of if the debt is discharged. And this case underscores that attorney regulation serves a fundamentally different purpose than debt enforcement. So, Your Honor, when you were talking about 523A7 and the dischargeability, that's the current subject of an ongoing adversary proceeding right now between Ms. Latcher and creditor ECI. Well, no, no, no. That's not A7. That's A6. A6. I'm sorry. A6. I apologize. But it is the subject of an ongoing adversary proceeding. A7 might be something that you would bring here, but you haven't. I just meant the debt. My point was the dischargeability of the debt is being litigated in a separate forum right now. But currently, that is irrelevant, as our argument is that the discharge does not enjoin the continuation of the proceedings, which are currently pending in the California Supreme Court. A briefing has concluded, so we're waiting for a decision in front of the California Supreme Court. Nor does it void the discipline. So critically, Latcher fails to demonstrate a violation of the discharge injunction because the discipline is not a debt collection. The recommendation of the discipline of the state bar court was based on numerous grounds, and it seems the court is familiar with that. First, she failed to obey 10 court orders. Ms. Latcher is simply incorrect that these orders were all discharged or based on failure to pay money. For instance, there were four separate court orders that she violated, producing discovery, compelling her to respond to discovery, providing accounting, providing privilege logs, as well as some other information. She also violated two court orders relating to an assignment order of the Superior Court and order modifying that assignment order. And even the ones that did relate to failure to pay money, they were sanctions, attorney's fees based on her unlawful conduct. She still violated those orders. Whether or not, maybe 10 years later or 15 years later, she declared bankruptcy, she still did violate those court orders. Her other discipline, the culpability was found on maintaining an unjust action, which was filing a frivolous appeal. The Court of Resources engaged in sanctionable conduct and referred that decision to the State Bar of California. Lastly, she also was recommended to be disciplined based on commingling of client funds and a client trust account, as well as failure to report judicial sanctions. So in sum, this conduct does not negate it simply because she declared bankruptcy. Despite whether or not she currently owes that money to a third party, the State Bar is not currently a creditor because there is no money that's currently owed to it. There might be some issues that's ordered for discipline costs or monetary sanctions. As this panel recognized in In Re Shear, in which Marilyn Shear made a largely identical argument regarding the nature of the discipline system, the State Bar's action in disciplining attorneys is not to recover debt, but to discipline conduct deemed harmful to the public. Determining disbarment was the appropriate remedy. The State Bar Court Review Department went through a very detailed analysis detailing her conduct causing significant harm over a lengthy 18-year period. ECI pursued over $80,000 in attorney's fees that were deemed to be an abusive waste of resources and determined that public protection requires disbarment. Secondly, Ms. Lasher argues that the discharge injunction voids her discipline, which right now, for one thing, the Bankruptcy Court correctly concluded there is no judgment that can be voided because there is no final discipline order. What we have now is a recommendation from the State Bar Court Review Department to the California Supreme Court. We can only recommend discipline. We are an administrative arm of the California Supreme Court. That's authority to impose that discipline. Secondly, even if the recommendation could be construed as a judgment or an order, the recommendation is not a judgment on Ms. Lasher's personal liability, which is required for it to be voided. In fact, the discipline does not involve payment of money at all. Rather, it just disbars Ms. Lasher. Well, it does recommend payment of money to the State Bar for discipline costs, but that's not at issue, not part of Ms. Lasher's argument. Next, with regard to the anti-discrimination provision of Section 525, as was pointed out during the questioning of Ms. Lasher, it requires a government entity cannot deny, revoke, suspend, or refuse to renew a license solely because the individual is a debtor. We are not withholding for license solely because of any reason to fail to pay a debt. If Ms. Lasher repaid everything she owes of the over $167, approximately, I don't have the number in front of me, but if she paid all of that money back, she would still remain involuntarily and actively enrolled due to her unethical conduct, which makes this case different than the next wave and the Waikiki case in which the license was conditioned upon payment of a debt. Therefore, we are not withholding for license for failure to pay debt, much less solely for failure to pay debt. I want to make sure you save some time to talk about your 11th Amendment and younger arguments, but if you want to finish this off first, go ahead. Yeah, I was just going to actually bring that up in relation to Ms. Lasher's supplemental brief, which is untimely, and we did not have a chance to respond to due to her belated filing of this document, but we have always consistently maintained that Ms. Lasher's argument should be made in front of the California Supreme Court, and that goes to both our 11th Amendment and younger abstention argument. We are not a creditor. This case doesn't involve property of the state, so as set forth in the briefing under Katz and its progeny, the state bar retains its 11th Amendment immunity. Hasn't the Supreme Court held twice in the Hood and Katz cases that the discharge is enforceable against states? Well, we are not arguing that it's not enforceable against the state, and if the state bar, for instance, could not collect on debt that has been discharged, so we admit that it is enforceable against us, but what we're saying here is that currently this proceeding doesn't involve that. It involves for license, which is not property of the state, so until it involves 525, 525 turns on the dischargeability of the debt, and I think it's pretty clear that 525 basically reinforces, makes the discharge meaningful for debtors. It preserves their livelihood to a certain extent, so do you really think that the Supreme Court would hold that 525 is not enforceable in a federal bankruptcy court? Well, I'm not aware that that's been addressed, but our argument is that here, her arguments aren't impacting that debt, so I'm not saying that 525 couldn't be applicable, or if her debt, or if she owed money at the state bar, for instance, and we actually were withholding her license solely for failure to pay dischargeable debt, then there might be jurisdiction, but here... You see, that's the merits. That goes to the merits, whether 525 is violated. That's one question. I'm now talking about jurisdiction. The question is whether the federal court can enforce 525 in the face of a pending state court case, and I think you're saying that it can't, and I'm wondering whether that could be right. No, I think it could. I mean, I think we're arguing, or we are arguing, under these circumstances, the state bar is immune because her case solely involves her discipline, that it does not involve the bankruptcy of state. I think if this case actually did involve the state bar's role as a creditor, for instance, then 525 could be enforced against the state bar. But it does involve the discharge in that the debtor's rights under 525 turn on the discharge, right? Right. So I come back to my question, why can't a federal court, a federal bankruptcy court, enforce 525 even though there's a pending state court proceeding? I think they could. I agree with that. I think under the circumstances of this case, I don't think that is at issue here for the reasons we stated in our case. Would you say the same thing about the Younger Abstention Doctrine, that the bankruptcy court isn't required to abstain in a case alleging that 525 is violated? Yeah, I agree with that. If there was a situation where we were a creditor, for instance, in the Albert case, which I'm sure this court's aware of, there was an issue there. Oh yeah, I'm aware of it. So in that case, when there actually is a discharge injunction violation, yes, there would be jurisdiction. But there is no property at issue. There is no part of the estate. So that was our argument under the specific facts of this unique case. I would come back and say then you're saying that the merits of the case affect the court's jurisdiction to decide it. And I think that gets it backwards. Jurisdiction comes before merits. The question is, if there's an allegation that 525 is violated, does the federal bankruptcy court have the right to adjudicate that allocation, even if there's pending state court proceedings? Yes, Your Honor. I think then that would be correct. And I do believe there's many other arguments here, as I stated before, about why the bankruptcy court should be affirmed. Well, we may agree with you about the proper construction of 525, but that's exactly Judge Ferris' point, right? Right. Agree, Your Honor. Okay, thank you. I guess I took you off the track of what you argued in your plan. I think I was just about finished. I did want to note that Ms. Lasher did raise many of these arguments before the California Supreme Court and that it's pending. So she does have that opportunity. I know she mentioned that she didn't, but she has had that opportunity to raise these issues and litigate why or why not. She has not engaged in misconduct or why perhaps the court may agree that some of these facts are outdated, as the bankruptcy court noted. But that's a proper counsel. Simplify that for me. Basically, Ms. Lasher could lose here, but eventually win before the Supreme Court. Well, I think the Supreme Court does not have jurisdiction to address violations of bankruptcy law, but they are the correct forum to address how her discipline may have been impacted by whether the debt goes away. So even if we affirm the bankruptcy court, Ms. Lasher could convince the Supreme Court of California that her license shouldn't be terminated. That's correct. I guess it's been terminated, I guess. It's been, she's been involuntarily and actively enrolled. So right now, I'm pending a decision by the California Supreme Court. So they haven't yet imposed discipline yet in this case. So if there's any other questions, I respectfully ask that this court affirm the judgment of the bankruptcy court. Okay, any questions? All set. Okay, great. Okay, Ms. Lasher, you've got, let's see the clock will say two minutes and 10 seconds. Please go ahead. Okay, thank you. First of all, I think it's important just because I didn't address the immunity abstention issue. It begs the question that this court is considering the facts that the Supreme Court has yet to rule on to determine whether or not discrimination took place. That puts the car before the horse in the jurisdiction issue that we've been talking about. But I think Gruntz and Lentz and some of the other cases say that whether or not I get the right to litigate it up in the Supreme Court or not, if I disagree and say that that interpretation is wrong, it comes back here. Because here is the right place to litigate that issue. Because here, the Supremacy Clause says that bankruptcy courts and federal issues have the right to litigate, to have the final say on those issues. So I think we're kind of going full circle. And I think also what's getting mixed up is, again, one, my being a debtor and not an attorney. Two, while we're talking about the idea that my misconduct, and for this argument's sake, let's just assume everything I did that they said, everything they allege I said, they say I did, I did. Even if I did all of that and I was really bad and Number one is the discharge voids all these orders that form the basis of contempt. Under California law, a contempt proceeding cannot be based on void orders. So regardless, the contempt would have to be voided. As I've never argued that, one, the State Bar violated the discharge. I never argued they violated 525. The issue before the court and the bankruptcy and the issue here is whether or not I've gotten a determination as to the reach of the discharge. The reach of the discharge is dependent upon 525A, and it can't be escaped that the two are together. 525A, and I still want to go back to the 523A7 issue, there is no adversary proceeding on the A7 relating to what the court asked about the contempt issue. There is not one. And that contempt under, I think it's Yellow Cab, which I didn't talk about, this Yellow Cab v. Dingley talks about the idea that when a contempt proceeding is based on the underlying debt and enforcement of the underlying debt, if this were automatic stay, that automatic stay would not allow it to go forward. And the issue here is in the automatic stay, although they were allowed to continue, there's a police power deal there or an exception. There is no police power exception to discharge. And we are focusing on all my alleged misconduct. Assuming it took place, that regulatory motive does not exist here. It cannot exist here. Wiki, FCC, the U.S. Supreme Court have already said, take that out of the picture. If you take out the motive and how bad I was, and I was disrespectful to the court, even if I disagree, and that's going to be litigated in the Supreme Court, even if I did all of that, when you're left standing at the end of the day, the discharge applies. Okay. I'm going to stop you. You're a little past your time. So thank you very much for your arguments to both sides. The matter is submitted, and you'll be receiving our written decision shortly. Thank you. Thank you. Thank you very much.
judges: Faris, Lafferty, and Corbit